**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **AFFYMAX, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 04 C 6216** |
| | ) | |
| **JOHNSON & JOHNSON, ORTHO** | ) | |
| **MCNEIL PHARMACEUTICAL, INC.,** | ) | |
| **ORTHO PHARMACEUTICAL RESEARCH** | ) | |
| **INSTITUTE, JOHNSON & JOHNSON** | ) | |
| **PHARMACEUTICAL RESEARCH &** | ) | |
| **DEVELOPMENT, L.L.C., and DOES 1-10,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Affymax, Inc. sued various defendants, including Ortho-McNeil Pharmaceutical, Inc. and Johnson & Johnson Pharmaceutical Research & Development, L.L.C. ("OMN" and "PRD," but collectively "Ortho"), seeking correction of inventorship and ownership of several patents and patent applications. Ortho moved to compel arbitration, and this Court granted Ortho's motion. *Affymax, Inc. v. Johnson & Johnson*, 420 F. Supp. 2d 876 (N.D. Ill. 2006). After more than four years, a three-member arbitration panel issued an award determining the parties' rights to the contested patents and patent applications. Affymax now moves to vacate the award in part pursuant to 9 U.S.C. § 10. For the reasons stated below, the Court grants Affymax's motion in part and denies it in part.

**Background**

Affymax is a drug discovery and development corporation. OMN and PRD are wholly-owned subsidiaries of Johnson & Johnson, a health care products company. In 1992, Affymax and R.W. Johnson Pharmaceutical Research Institute ("PRI"), an unincorporated division of OMN, entered into a contract called the Research and Development Agreement ("RDA"). The RDA committed Affymax and PRI to conducting joint research to develop peptide compounds[1] with potential pharmaceutical applications. It provided that inventions created in connection with this research would be the property of the creating party, with joint inventions to be jointly owned. It also contained a provision mandating arbitration of claims and controversies arising from the agreement.

On September 23, 2004, Affymax filed an action in this Court seeking correction of inventorship and ownership of certain patents and patent applications owned by Ortho. Ortho counterclaimed for a declaratory judgment that Affymax's claims were subject to arbitration based on the terms of the RDA and moved to compel arbitration. On February 28, 2006, the Court granted Ortho's motion and stayed the case pending arbitration. Affymax initiated a demand for arbitration with the American Arbitration Association ("AAA") on April 12, 2006. The AAA appointed a three-member arbitration panel, which oversaw more than two years of fact and expert discovery and conducted a thirty-five day evidentiary hearing in the fall of 2009. The panel later received briefing

---

[1] A peptide is "a compound containing two or more amino acids in which the carboxyl group of one acid is linked to the amino group of the other." Dictionary.com, http://dictionary.reference.com/browse/peptide (last visited Mar. 18, 2011).

from the parties on the various issues addressed at the hearing.

On October 4, 2010, the panel issued its arbitration award. The panel ruled that Affymax and Ortho jointly invented, and thus are joint owners of, U.S. Patent No. 5,986,047 (the "'047 patent"), U.S. Patent No. 5,830,851 (the "'851 patent"), U.S. Patent No. 5,773,569 (the "'569 patent"), and U.S. Patent Application No. 11/855,948 (the "'948 application"). The panel also ruled that Ortho's scientists were the sole inventors of U.S. Patent No. 5,767,078 (the "'078 patent"), making Ortho the sole owner of that patent. Because the panel found that ownership of a patent "extends to any additional U.S. or foreign patent or patent application claiming the benefit of the filing date of such a patent or patent application and having at least one claim that is fully enabled under U.S. patent law by that disclosure," the panel's award granted Ortho sole ownership of European Patent Application No. EP 96/918,317, Japanese Patent No. 3,998,043, Australian Patent No. 732,294, Australian Patent Application No. 2004/203,690, Canadian Patent Application No. 2,228,277, and Mexican Patent No. 203,378 (collectively the "foreign patents"). Pl.'s Mem., Ex. 1 at 1 (hereinafter "Award").

Affymax has moved to vacate the panel's award. It argues that the panel "manifestly disregarded the [RDA] and U.S. patent law, and based its decision on assumed 'facts' that are actually contrary to the undisputed evidence." Pl.'s Mem. at 1. Affymax seeks to vacate the award to the extent that it granted Ortho sole inventorship of the '078 patent and the foreign patents.

## Discussion

"When parties seek judicial review of an arbitrator's award, the role of the courts, both district and appellate, is extremely limited." *United Food & Commercial Workers,*

3

*Local 1546 v. Illinois-American Water Co.*, 569 F.3d 750, 754 (7th Cir. 2009). In this case, Affymax seeks relief pursuant to 9 U.S.C. § 10 and argues that the panel manifestly disregarded the law when it rendered its decision. In the Seventh Circuit, review of an award pursuant to this standard "encompass[es] only two scenarios: (1) an order requiring the parties to violate the law; or (2) an order that does not adhere to the legal principles specified by the contract." *Halim v. Great Gatsby's Auction Gallery*, 516 F.3d 557, 563 (7th Cir. 2008). As such, "[f]actual or legal error, no matter how gross, is insufficient to support overturning an arbitration award." *Id.*; *see also Bavarati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704, 706 (7th Cir. 1994) ("[W]e do not allow the disappointed party to bring his dispute into court by the back door, arguing that he is entitled to appellate review of the arbitrators' decision."). Courts should "not set aside an arbitral award so long as the arbitrator interpreted the parties' agreement *at all.*" *Prostyakov v. Masco Corp.*, 513 F.3d 716, 723 (7th Cir. 2008) (emphasis in original).

Affymax presents four bases for overturning the arbitrators' award: first, the panel failed to determine inventorship of the contested patents using claim-by-claim analysis; second, the panel failed to apply binding case law on inventorship, including *Vanderbilt Univ. v. ICOS Corp.*, 601 F.3d 1297 (Fed. Cir. 2010), in its inventorship analysis; third, the panel mistakenly assumed that no document trail linked Affymax's scientists to the claimed inventions in the '078 patent; and finally, the panel impermissibly considered other legal doctrines in its inventorship analysis, including novelty, priority, and enablement.

## 1. Claim-by-claim analysis

Affymax first argues that the panel failed to examine every claim of the contested

patents in determining inventorship, but instead "abruptly ended its analysis" after reviewing only two of the '078 patent claims, and therefore erroneously "conclud[ed] that Affymax scientists didn't contribute to any of the claims" of that patent or the foreign patents.  Pl.'s Mem. at 13.

Contrary to Affymax's argument, the award indicates that the panel considered all of the claims of the '078 patent.  As a preliminary matter, the panel expressly acknowledged its duty to consider "each claim of each patent" in determining inventorship.  Award at 3.  The panel then provided detailed explanations regarding why the claims of the '569 patent, the '851 patent, the '047 patent, and the '948 application demonstrated that these patents define joint inventions of Affymax and Ortho.  *Id.* at 3-4.  Turning to the '078 patent, the panel noted that "[c]laim 1 of [the '078 patent] defines a method that does not rely upon the core sequence for novelty.  *All of the remaining claims of the '078 patent depend from claim 1.*"  *Id.* at 4 (emphasis added).  The plain text of the award reveals that the panel contemplated all of the '078 patent's claims.

Affymax argues that the panel should have explained its reasoning regarding every claim of every patent, including the foreign patents.  But the absence of a detailed explanation of the panel's reasoning is not grounds to vacate the award.  First, the RDA contains no provision that required the panel to explain its rationale in detail.  *Cf. ARCH Devel. Corp. v. Biomet, Inc.*, Nos. 02 C 9013, 03 C 2185, 2003 WL 21697742, at *1 (N.D. Ill. July 30, 2003) ("[I]t was decided amongst the parties, the AAA and the Arbitrator that the Arbitrator was to render a 'reasoned award'").  Second, an arbitration panel is not generally required to provide a detailed explanation of its reasoning.  *Wellons, Inc. v. T.E. Ibberson Co.*, 869 F.2d 1166, 1169 n. 1 (8th Cir. 1989) ("An

5

arbitration award need not contain any detailed description of the arbitrators' findings");

*Shearson Hayden Stone, Inc. v. Liang*, 653 F.2d 310, 312 (7th Cir. 1981) ("The

arbitrators gave no reasons for their award, but they are not required to do so.").  The

panel did not manifestly disregard the law by failing to expressly discuss each and every

claim of the '078 patent and the foreign patents.

## 2.     Failure to apply inventorship law

Affymax next argues that the panel "fail[ed] to apply Federal Circuit and statutory

principles governing joint inventorship in sponsored research collaborations," including

the Federal Circuit's decision in *Vanderbilt*.  Pl.'s Mem. at 18-19.  In Affymax's view,

"there is no indication that the panel ever applied the *Vanderbilt* analysis in connection

with the '078 patent."  *Id.* at 20.

Under longstanding precedent, "[a] joint invention is the product of collaboration

of the inventive endeavors of two or more persons working toward the same end and

producing an invention by their aggregate efforts."  *Monsanto Co. v. Kamp*, 269 F.

Supp. 818, 824 (D.D.C. 1967); 35 U.S.C. § 116.  There must be "some element of joint

behavior, such as collaboration or working under common direction."  *Kimberly-Clark*

*Corp. v. Proctor & Gamble Distrib. Co.*, 973 F.2d 911, 917 (Fed. Cir. 1992).  The

individual contributors "need not have their own contemporaneous picture of the final

claimed invention in order to qualify as joint inventors," but "the interplay between

conception and collaboration requires that each co-inventor engage with the other co-

inventors to contribute to a joint conception."  *Vanderbilt*, 601 F.3d at 1303.

The panel clearly and meticulously stated the applicable legal standards in its

award.  Award at 4-6.  It noted that "[*Vanderbilt*] clarifies the current view of the federal

circuit concerning joint inventorship as it occurs in sponsored research circumstances."
*Id.* at 5.  The panel also expressly stated that it was "guided by the analysis of th[e

*Vanderbilt*] opinion."  *Id.*  It quoted portions of that opinion at length before applying it to

the parties' collaborative efforts under the RDA, tracing "[t]he evolution of the inventions

defined by the claims of th[e '078] patent."  *Id.* at 8.  Under these circumstances, there is

no basis to find that the panel manifestly disregarded the law of joint inventorship with

respect to the '078 patent.  Though Affymax may disagree with the panel's application

of *Vanderbilt* and its predecessor cases, assertions of legal error are not a proper basis

to vacate an arbitration award.  *See Halim*, 516 F.3d at 563.

### 3.    Document trail finding

Affymax also asserts that "[t]he panel's inventorship conclusions were premised

on a mistaken assumption that no document trail connected Affymax scientists to the

inventions claimed in the '078 patent."  Pl.'s Mem. at 22.  It contends that it is

appropriate to vacate an arbitration award "where the panel explicitly based its decision

on an assumption that no evidence was presented in support of a particular fact, when it

was undisputed that such evidence was presented.  *Id.* at 23.

Affymax concedes that no Seventh Circuit decision supports its argument.

Instead, Affymax cites this Court's decision in *Mollison-Turner v. Lynch Auto Grp.*, No.

01 C 6340, 2002 WL 1046704 (N.D. Ill. May 23, 2002).  In that case, an arbitrator

issued an award resolving plaintiff's claims against a seller of automobiles.  The

arbitrator's award denied all of plaintiff's claims on the assumption that plaintiff had

provided no affidavits attesting that defendants' agents made certain statements about

the vehicle defendant sold to plaintiff.  Recognizing that a court "should not vacate an

arbitration award simply because the arbitrator made factual errors," this Court

concluded that "the arbitrator's award makes clear that he was operating under a

significant mistaken assumption not about the facts of the case, but about the evidence

[plaintiff] offered." *Id.* at *3. Because plaintiff had, in fact, submitted affidavits about the

statements allegedly made by defendants' agents, the Court "remand[ed] to the AAA so

that a new decision c[ould] be issued after review of all the evidence." *Id.*

This case is not analogous to *Mollison-Turner*. There, the panel issued its award

based on the assumption that certain evidence was not before the panel, when in fact it

was. In this case, by contrast, the parties presented numerous exhibits to the panel,

including the patent memorandum Affymax claims is "critical" to the dispute over the

'078 patent. Pl.'s Mem. at 24. Affymax says that the memorandum reveals that "the

peptides used to perform the experiments that led to the '078 patent came from

Affymax." *Id.* But the panel found that the core sequence of these peptides, to which

Affymax indisputably contributed, was not itself an inventive contribution to the claims of

the '078 patent. Specifically, the panel determined that the invention defined by the

claims of the '078 patent was a particular method of combining different strands of

molecules. Award at 4 (finding that claim 1 of the '078 patent—upon which "[a]ll of the

remaining claims of the '078 patent depend"—defines a method of "dimerizing EPOR

with a peptide dimer of monomers that bind but do not activate EPOR"). The panel

concluded that there was "no document trail tying the Affymax team to" this particular

invention. *Id.* at 8. The existence of documents linking Affymax scientists to the

peptides used in experiments that led to the '078 patent does not undermine this

conclusion.

Affymax has not contested the panel's basic assumptions about what evidence was presented during the arbitration. Its disagreement with the panel's conclusions about the documents it considered is, at its core, a disagreement with the panel's legal and factual findings. This is not an appropriate basis to vacate the award. *See Halim*, 516 F.3d at 563.

## 4.     Consideration of other legal doctrines

Finally, Affymax argues that the panel manifestly disregarded applicable law and the RDA by "appl[ying] legal principles—i.e., novelty, dependent claims, priority, and antecedent basis—which are wholly unrelated to the inventorship standards it knew it was contractually bound to apply" when it considered the inventorship of the '078 patent and the foreign patents. Pl.'s Reply at 6.

As discussed above, the panel identified the proper standard for determining inventorship. The award provides details about how the invention underlying the '078 patent was conceived and developed, satisfying *Vanderbilt*'s command that the "primary focus" in this inquiry should be on "collaboration and joint behavior." 601 F.3d at 1303. The panel's analysis led it to conclude, however, that given the nature of the inventions defined by the claims of the '078 patent, Affymax's scientists were not joint inventors. *See* Award at 8 ("The evolution of the inventions defined by the claims of [the '078] patent can be traced through documents of record from Dr. Johnson's initial proposal through his collaboration with Dr. Zivin. Dr. Dower is a scientist of renown, who has made significant contributions to the relevant art. It is understandable that he recognizes consistency between the outcome of the RDA project and his previous knowledge and speculations. *Nevertheless, there is no document trail tying the Affymax*

9

*team to the inventions specifically claimed by the '078 patent.*") (emphasis added).

Affymax argues that with respect to the foreign patents, the panel failed to apply the proper legal standards. The award does not contain any independent discussion of these patents. Instead, it notes that ownership of a patent "extends to any additional U.S. or foreign patent or patent application claiming the benefit of the filing date of such a patent or patent application and having at least one claim that is fully enabled under U.S. patent law by that disclosure." *Id.* at 1. On this basis, the panel granted Ortho sole ownership of the foreign patents, which share these attributes with the '078 patent.

Because the panel was "charged with determining inventorship issues only" and the parties "stipulated that ownership is congruent with inventorship," the panel should have assessed inventorship separately with regard to the foreign patents before determining their ownership. Award at 1. The panel's determination to do so on a basis divorced from inventorship constitutes more than mere legal error, given that the panel was clearly aware of the appropriate legal standard. *Cf. United Food,* 569 F.3d at 755 (internal quotation marks omitted) ("[I]t is only when the arbitrator *must* have based his award on some body of thought, or feeling, or policy, or law that is outside the contract . . . that the award can be said not to draw its essence from the parties' agreement") (emphasis in original); *see also Int'l Union of Operating Eng'rs, Local 139 v. J.H. Findorff & Son, Inc.*, 393 F.3d 742, 745 (7th Cir. 2004) ("[O]nly a decision to ignore or supersede language conceded to be binding allows a court to vacate the award."). By not considering these patents' inventorship, the panel failed to "interpret[] the [RDA] *at all*." *Prostyakov*, 513 F.3d at 723 (emphasis in original).

Because the panel manifestly disregarded the law in determining the ownership

of the foreign patents, the Court vacates that portion of the award and remands the case to the panel to determine the foreign patents' inventorship using the appropriate standard. *See Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 511 (2001) (internal quotation marks omitted) (when an arbitration award is vacated, the "appropriate remedy is to remand the case for further arbitration proceedings.").

## Conclusion

For the reasons stated above, the Court grants in part and denies in part plaintiff's motion to vacate the arbitration award [docket no. 114]. The Court will remand the case in part to the arbitration panel, specifically, for determination of the foreign patents' inventorship. The case is set for a status hearing on March 28, 2011 at 9:30 a.m. Counsel should be prepared to address on that date whether the appropriate course is to enter a judgment confirming the remainder of the award or instead to defer entry of judgment until after the arbitration panel completes the tasks required by the order remanding the case.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  March 21, 2011